UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

PAMELA SIMCOX,

                              Plaintiff,

        -vs-                                    **No. 1:14-CV-00787 (MAT)**
                                                **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                              Defendant.

———————————————————————

## I.  Introduction

        Represented by counsel, Pamela Simcox ("plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, plaintiff's motion is granted to the extent that this matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order.

## II. Procedural History

        The record reveals that in March 2011, plaintiff (d/o/b April 8, 1965) applied for DIB and SSI, alleging disability as of January 1, 2006. After her applications were denied, plaintiff

requested a hearing, which was held before administrative law judge Timothy M. McGuan ("the ALJ") on October 4, 2012. The ALJ issued an unfavorable decision on January 17, 2013. The Appeals Council denied review of that decision and this timely action followed.

## III. Summary of Evidence

Plaintiff's medical record indicates continuing diagnoses of obesity, moderate obstructive airways disease, diabetes mellitus (type 2), and asthma. Although plaintiff was consistently diagnosed with diabetes and required insulin, the medical record does not reflect complications from this diagnosis, even where plaintiff reported that her medications were limited due to lack of insurance. Upon treatment for diabetes management, plaintiff repeatedly mentioned no complications as a result of this condition, and when asked, she denied nephropathy, neuropathy, and retinopathy. See T. 251, 278, 326, 399-400, 415-18. Other than recorded high sugar levels, the only evidence in the record as to symptoms resulting from diabetes came from plaintiff's own testimony that during "high sugar attacks" she became groggy and unable to control her bladder, and that during "low sugar attacks" she became disoriented, broke out in sweats, and "[got] . . . wiggly in the knees to where [she] could barely support [her]self." T. 31, 33. These complaints are not recorded throughout her medical records.

Plaintiff also treated for obstructive airways disease (noted as moderate in October 2009) and asthma. Dr. James Cumella, who

treated plaintiff for asthma from approximately March 2009 through the date of the ALJ's decision, noted initially that plaintiff's asthma was poorly controlled, with a 7/25 asthma control score. Plaintiff's control score improved, however; in August 2012 he noted that her score was 17/25 and opined that her "symptoms [did] not interfere with normal activity." T. 420. Over the course of plaintiff's treatment for her various medical conditions, she consistently was recorded as taking approximately ten to twenty different medications, which treated symptoms of diabetes, asthma, and gastroesophageal reflux. Notably, none of plaintiff's medications were for the treatment of a mental health condition.

Dr. Nikita Dave completed a consulting internal medicine examination, at the request of the state agency, in May 2011. Plaintiff reported a history of asthma, eczema, knee pain, sleep apnea, and diabetes, which she stated had required insulin treatment since 1985. She reported that her "sugars [were] always high." T. 337. In terms of activities of daily living ("ADLs"), plaintiff reported cooking, cleaning, and doing laundry as needed; shopping once per week; dressing and bathing herself daily; and watching television, radio, reading, going to church, and seeing friends. Plaintiff's physical examination was unremarkable, with the exception of bilateral knee flexion limited to 130 degrees. According to Dr. Dave, plaintiff "would need to avoid dust, fumes, smoke, inhalants, chemicals, outdoor environmental allergens, strong chemicals, and fumes due to environmental allergies/asthma."

T. 340. Dr. Dave opined that she "may need to avoid direct exposure for prolonged periods of time to the sun/outdoors due to eczema history," and that she had "[m]ild to moderate limitations for standing, walking, squatting, kneeling, and crawling due to [her] left knee." T. 341.

Dr. Gregory Fabiano completed a consulting psychiatric examination, at the request of the state agency, in June 2011. Plaintiff reported that she "started seeing a counselor on an outpatient basis every two weeks in 2006 and she continue[d] to receive this intervention." T. 343. Plaintiff reported symptoms of depression, including "dysphoric mood, psychomotor retardation, crying spells, a loss of usual interests, fatigue and loss of energy, a diminished sense of self-esteem, a diminished sense of pleasure, social withdrawal, and recurrent thoughts of death or suicide." T. 344. On mental status examination, plaintiff exhibited depressed affect, dysthymic mood, and mildly impaired recent and remote memory skills, which Dr. Fabiano opined "may have been secondary to some of the depression or emotional distress she was experiencing during the interview." T. 345. In Dr. Fabiano's opinion, plaintiff's "examination appear[ed] to be consistent with psychiatric problems, but in itself this [did] not appear to be significant enough to interfere with [her] ability to function on a daily basis." T. 346.

Dr. T. Andrews completed a psychiatric review technique form in June 2011. Upon review of the medical record, Dr. Andrews opined

that plaintiff had mild restrictions of ADLs; moderate difficulties maintaining social functioning and maintaining attention, concentration, persistence, or pace; and no past episodes of decompensation. A mental residual functional capacity ("RFC") completed by Dr. Andrews found that plaintiff had various moderate limitations consistent with these restrictions. Dr. Andrews opined that plaintiff could perform substantial gainful activity in a low contact setting. Dr. Andrews also noted that plaintiff had treated at Trott Access Center, but that no records from that institution appeared in the file.

## IV.  The ALJ's Decision

The ALJ followed the well-established five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 404.1520. Initially, the ALJ determined that plaintiff met the insured status requirements of the Social Security Act through September 30, 2012. At step one, the ALJ determined that plaintiff had not engaged in substantial gainful activity since January 6, 2006, the alleged onset date. At step two, the ALJ found that plaintiff suffered from the following severe impairments: mild to moderate obstructive airway disease with severe small airways dysfunction, and obesity. The ALJ specifically found that plaintiff's diabetes mellitus, asthma, and mental health impairments were non-severe. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.

Before proceeding to step four, the ALJ determined that plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that she should avoid exposure to respiratory irritants including fumes, dusts, and gases. At step four, the ALJ determined that plaintiff was not capable of performing past relevant work as a personal care aide or bus driver. At step five, the ALJ found that considering plaintiff's age, work experience, and RFC, jobs existed in significant numbers in the national economy that plaintiff could perform. The ALJ thus found that plaintiff was not disabled.

## V.  Discussion

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhard, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

### A.    Step Two Finding

Plaintiff contends that the ALJ's step two finding, that plaintiff's diabetes mellitus (Type II) and asthma were not severe impairments, constituted reversible error. The ALJ found that plaintiff's diabetes was non-severe, noting that plaintiff denied complications such as retinopathy and neuropathy associated with

6

her diabetes, and that when she was medicated, her condition was well-controlled. The ALJ also found plaintiff's asthma to be non-severe, noting that the condition was "adequately controlled" with use of her Albuterol inhaler, and that plaintiff had most recently reported using the inhaler only three times a week and "testing showed only mild exacerbation." T. 15.

To the extent the ALJ erred in finding these impairments to be non-severe, that error was harmless "because the ALJ concluded that [p]laintiff had established other impairments considered severe under the Act . . . and continued with the sequential disability analysis." Taylor v. Astrue, 32 F. Supp. 3d 253, 267 (N.D.N.Y. 2012). Moreover, in this case, the ALJ's RFC finding adequately accounted for any limitations associated with plaintiff's diabetes and asthma. "As a general matter, an error in an ALJ's severity assessment with regard to a given impairment is harmless . . . when it is clear that the ALJ considered the  claimant's [impairments] and their effect on his or her ability to work during the balance of the sequential evaluation process." Diakogiannis v. Astrue, 975 F. Supp. 2d 299, 311-12 (W.D.N.Y. 2013) (internal quotation marks and citations omitted). The ALJ's discussion at step two made clear that he considered the record evidence regarding plaintiff's diabetes and asthma, and the RFC finding regarding functional limitations resulting from those conditions was supported by substantial evidence as discussed below.

**B.   RFC Finding**

**1. Diabetes and Asthma**

Plaintiff contends that the ALJ's RFC finding did not adequately account for limitations resulting from her diabetes, asthma, knee pain, and mental health impairments. Regarding plaintiff's diabetes, although her medical records indicate high sugar levels on multiple occasions, plaintiff consistently either denied complications from the condition or reported no associated complications. Upon its review of the record, the Court finds that the RFC finding adequately considered the effects of plaintiff's diabetes on her overall RFC. As to plaintiff's asthma, the Court finds that the RFC finding requiring avoidance of exposure to respiratory irritants including fumes, dusts, and gases, adequately accounted for any limitations stemming from her asthma and obstructive airways disease. As noted above, the most recent treatment note from plaintiff's treating asthma provider, Dr. Cumella, indicated that plaintiff's asthma symptoms did not interfere with normal activity.

**2.   Left Knee Restrictions**

Plaintiff contends that the ALJ erred in failing to credit the portion of Dr. Dave's consulting opinion which found that she had moderate limitations in standing and walking secondary to left knee pain. The Court notes that there is no record of treatment for left knee pain within plaintiff's medical record. Nevertheless, there is nothing in the record which *contradicts* Dr. Dave's opinion as to

mild to moderate limitations in the left knee. "[A]n ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error." Hilsdorf v. Comm'r of Soc. Sec., 724 F. Supp. 2d 330, 347 (E.D.N.Y. 2010).

Here, the ALJ impermissibly substituted his own medical judgment by discarding this limitation, which was assessed by Dr. Dave based on plaintiff's subjective complaints as well as Dr. Dave's objective finding from his examination revealing limited flexion. The ALJ rejected this limitation because of the absence of any substantial evidence in the record, from a medical source, supporting any contrary finding. Therefore, the case must be remanded for a reconsideration of plaintiff's RFC in light of Dr. Dave's finding regarding plaintiff's left knee restriction. If the ALJ deems it necessary, he may request treatment notes or an opinion from a treating physician regarding plaintiff's left knee limitations.

### 3.   Mental Impairments

Plaintiff's final contention is that the ALJ erred in failing to properly consider her mental impairments in considering her RFC. The regulations state that although a claimant is generally responsible for providing evidence upon which to base an RFC assessment, before the Administration makes a disability determination, the ALJ is "responsible for developing [the claimant's] complete medical history, including arranging for a

consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 404.1545 (emphasis supplied); see also 20 C.F.R. § 416.945.

In this case, consulting examiner Dr. Fabiano diagnosed major depressive disorder and post-traumatic stress disorder. The ALJ gave significant weight to Dr. Fabiano's finding that plaintiff's "examination appear[ed] to be consistent with psychiatric problems, but *in itself* this [did] not appear to be significant enough to interfere with [her] ability to function on a daily basis." T. 346 (emphasis added).

At the examination, however, plaintiff indicated that she had been in treatment for psychiatric symptoms, on a biweekly basis, since 2006. The record also indicates that in 2006, plaintiff was referred by a Dr. Mary Webb to a rape counseling center. Additionally, Dr. Andrews' psychiatric review technique noted that plaintiff treated for mental health symptoms at Trott Access Center, but that he did not have records from that institution in plaintiff's file. Considering Dr. Dave's mental status examination, which noted some abnormalities, along with the additional evidence in the record indicating that plaintiff was in regular treatment for psychiatric issues, the Court finds that the ALJ did not adequately develop the record with regard to plaintiff's mental impairments. See, e.g, Corey v. Astrue, 2009 WL 4807609, *4 (N.D.N.Y. Dec. 8, 2009) (noting that ALJ had duty to develop record

where there was a "gap in the record that must be remedied");
Metaxotos v. Barnhart, 2005 WL 2899851, *5 (S.D.N.Y. Nov. 3, 2005)
(remanding where ALJ failed to develop the record by not obtaining
treatment notes, records, or opinions from plaintiff's treating
psychiatrist).

On remand, the ALJ is directed to contact plaintiff's treating
mental health sources for treatment notes and for an opinion as to
functional limitations, if any, resulting from any mental health
impairments. In determining plaintiff's RFC, the ALJ must consider
plaintiff's mental health impairments, if any, in combination with
plaintiff's other impairments in accordance with the regulations.

## VI.  Conclusion

For the foregoing reasons, the Commissioner's cross-motion for
judgment on the pleadings (Doc. 9) is denied and plaintiff's motion
for remand (Doc. 6) is granted to the extent that this matter is
remanded to the Commissioner for further administrative proceedings
consistent with this Decision and Order. The Clerk of the Court is
directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**


**S/Michael A. Telesca**
HON. MICHAEL A. TELESCA
United States District Judge

Dated:      January 19, 2016
            Rochester, New York.

11